**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

**Civil Action No. 10-cv-02026-MSK-MJW**

**BRIAN PATRICK STREET,**

       **Plaintiff,**

**v.**

**ROBERT SIMON, Inmate[1];
BROWN, S.I.S. Lieutenant;
LAWSON, Officer;**

       **Defendants.**

_____

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS**
_____

       **THIS MATTER** comes before the Court pursuant to Defendants Brown and Lawson's

---

[1]The docket in this case indicates that the United States Marshal attempted to serve the Summons and Complaint upon Mr. Simon, but was unable to do so **(# 21)**. The return of service notes that "several inmates named 'Robert Simon' are in federal custody, none are held by [the facility identified by Mr. Street as the location of Defendant Simon] specifically." The record does not indicate that Mr. Street has since made any attempt to obtain a current address at which Mr. Simon can be served.

       Pursuant to Fed. R. Civ. P. 4(m), service upon a defendant must be completed within 120 days of commencement of the action, unless the plaintiff can show good cause. Accordingly, Mr. Street will be given 14 days to show cause why the claims against Mr. Simon should not be dismissed for failure to effect timely service under Rule 4(m). In responding to that Order, Mr. Street shall specifically identify the steps he has taken to date to locate a current address for Mr. Simon, the additional steps he believes he will need to take to obtain that address, and the time frame in which he anticipates taking those additional steps. The Court advises Mr. Street that the failure to show good cause for an extension of time to achieve service on Mr. Simon may result in dismissal of his claims against Mr. Simon without prejudice.

Motion to Dismiss **(# 33)**.[2] Mr. Street did not file any formal response, but the Court has considered two letters **(# 37, 40)** by Mr. Street to the extent they bear on the analysis herein.

## FACTS

According to Mr. Street's Second Amended Complaint **(# 11)**, at the time of the events herein, he was an inmate in the custody of the Federal Bureau of Prisons ("BOP"). On April 17, 2008, while being transferred to the BOP's FCI Englewood facility, unspecified persons threatened to rape him upon his arrival at the prison. Mr. Street immediately requested that he be placed in protective custody, and upon arrival, he was taken to the "Annex" of the facility. A few days later, Defendant Lawson, a Corrections Officer assigned to the Annex "began going up and down the tier that I was on in the Annex telling all the inmates that I was a 'chomo' [prison slang for a convicted child molester]" and telling them of the threats that Mr. Street would be raped if he went to the main facility.

Approximately six weeks later, Mr. Simon was assigned (by unidentified persons) to share a cell with Mr. Street. On ten occasions over a roughly 30-day period, Mr. Simon raped Mr. Street. Mr. Simon instructed Mr. Street not to make any complaints, and stated that Defendant Brown, an investigator with the BOP, "had it in for [Mr. Street], didn't like [him], and wanted [him] fucked with." Mr. Street contends that when he "finally built up the courage to reach out for help," he was "ridiculed by [Mr. Brown] and the local FBI agents," although he does not elaborate.

As relevant here, Mr. Street brings a single claim for relief: a *Bivens* claim against Mr.

---

[2]The Court previously referred **(# 39)** the motion to the Magistrate Judge for a recommendation. By this Order, the Court withdraws that reference.

Lawson and Mr. Brown, alleging that they failed to protect him from harm in violation of the 8th Amendment to the United States Constitution and violated the Prison Rape Elimination Act, 42 U.S.C. § 15601 *et seq.* Mr. Lawson and Mr. Brown now move to dismiss **(# 33)** the claims against them, arguing that Mr. Street's Second Amended Complaint fails to state a cognizable 8th Amendment claim against them and that, if it does, they are nevertheless entitled to qualified immunity.

## ANALYSIS

### A. Standard of review

#### 1. Motion to dismiss standard

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

With regard to what must be pled to avoid dismissal, the Supreme Court in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), described the standard that must be met as "facial plausibility." In this context, "plausibility" refers to the scope and degree of specificity of the

allegations in the complaint. *Khalik v. United Air Lines*, ___ F.3d ___, 2012 WL 364058 (10th Cir. Feb. 6, 2012). Although Fed. R. Civ. P. 8(a)(2) still requires the pleader to supply only "a short and plain statement of the claim," that statement must provide more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or generalized allegations of conduct that "encompass a wide swath of conduct, much of it innocent." *Id.* In this regard, the plaintiff must do more than articulate a set of facts that could "conceivabl[y]" or "possibly" give rise to a claim; he must "nudge[ ] his claims across the line from conceivable to plausible." *Id.* Of course, the degree of specificity that will be required will necessarily vary based on the context of the case. *Id.*

*Iqbal* suggests that one way for the Court to proceed when considering a Rule 12(b)(6) motion is for the Court to "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. 129 S.Ct. at 1950. Once the complaint has been winnowed down to only those sufficiently-specific, non-conclusory factual allegations, the Court treats those allegations as true and proceeds to examine whether, under the controlling law, those facts are sufficient to state a claim.

    2. *Pro se* pleading standard

In considering Mr. Street's filings, the Court is mindful of his *pro se* status, and accordingly, reads his pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in his use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve Mr. Street of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the

substantive law, and in these regards, the Court will treat Mr. Street according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

### B. Failure to Protect claim

The most appropriate case discussing the standard to be applied to a *Bivens* claim by an inmate claiming that prison officials failed to protect him against sexual assault in violation of the 8th Amendment is *Farmer v. Brennan*, 511 U.S. 825 (1994). That case recognizes that the Eighth Amendment obligates prison officials to, among other things, "take reasonable measures to guarantee the safety of inmates," including protecting them against violence at the hands of other inmates. *Id.* at 882-83. However, the fact that an inmate suffers from such an assault does not give rise to liability; a prison official is liable for a constitutional deprivation in such circumstances only where two requirements are met: (i) the inmate must show that he was incarcerated under conditions "posing a substantial risk of serious harm"; and (ii) the inmate must show that the prison official being sued acted in response to that risk with a "sufficiently culpable state of mind" – namely, with "deliberate indifference to inmate health and safety." *Id.* at 834. In this context, "deliberate indifference" means that the official both subjectively knew of the risk posed to the inmate and that the official nevertheless elected to ignore that risk. *Id.* at 837.

A superficial reading of *Farmer* might suggest that Mr. Street's allegations would be sufficient to assert a claim against Mr. Lawson. Mr. Lawson allegedly told other inmates that Mr. Street was a child molester and was at risk of being raped if placed in the general population of the prison. The fact that Mr. Lawson was specifically cognizant of the risk of rape faced by

Mr. Street would demonstrate his subjective perception of a risk of harm to Mr. Street; Mr. Lawson's dissemination of the character of Mr. Street's crimes to other inmates (presumably those who might not otherwise know of Mr. Street's crimes) indicates Mr. Lawson's deliberate indifference to the risk that other inmates might violently retaliate against Mr. Street.

But this reasoning expands *Farmer* further than it was apparently intended. There is little question that Mr. Lawson could be held liable for the assaults on Mr. Street if the perpetrator of those assaults was someone who decided to attack Mr. Street because of Mr. Lawson's statements (either because the perpetrator learned of Mr. Street's crimes through Mr. Lawson or because the perpetrator understood Mr. Lawson to be essentially endorsing an attack against Mr. Street). The situation is far less clear, however, if the perpetrator of the assault on Mr. Street was entirely unaware of Mr. Lawson's statements. *Farmer* makes clear that a prison official cannot escape liability by showing that "he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault," and that "it does not matter whether the risk comes from a single source or multiple sources." 511 U.S. at 843 (emphasis added); *see also Howard v. Waide*, 534 F.3d 1227, 1240 (10th Cir. 2008) (inmate is not required to "give notice of who precisely is behind the threat" to his safety). But courts have also refused to stretch liability far enough to cover a prison official who disregards a risk that one particular fellow inmate will assault a prisoner, only to have an entirely different and apparently-unforeseen perpetrator do so, *Staley v. Owens*, 367 Fed.Appx. 102 (11th Cir. 2010) ("Although an inmate does not necessarily have to identify the particular source of risk, in this case, there is no evidence that Staley's fear of reprisal at the hands of Haywood based on a specific incident between them alerted [the defendant] to a substantial risk of harm to Staley

from Brown, or any other inmate"), or an official who created an abstract risk of assault generally. *Decker v. Dunbar*, 633 F.Supp.2d 317, 356 (E.D.Tx. 2008) (no liability where officer transported plaintiff to the law library with prisoners in administrative segregation, thus giving fellow inmates the impression that plaintiff was homosexual (or at least otherwise subject to special protection), only to have plaintiff thereafter assaulted by fellow inmate).

Taken together, the caselaw makes clear that the focus of the analysis is on the particular risk subjectively perceived by the defendant and the extent that such the risk ultimately results in injury. Here, without some factual allegation by Mr. Street that would connect Mr. Lawson's statements to the inmates in the Annex with the decision of Mr. Simon to assault Mr. Street, this Court cannot say that the risk of harm to Mr. Street ignored by Mr. Lawson deliberately ignored in making such comments resulted in the harm that Mr. Street suffered. If, for example, Mr. Street can allege (and eventually establish) that Mr. Simon learned of Mr. Street's crimes through Mr. Lawson himself or from inmates who repeated Mr. Lawson's statements, such that Mr. Simon thereafter decided to assault Mr. Street, a claim against Mr. Lawson might lie. But here, the Court only has allegations that would demonstrate a coincidence between Mr. Lawson's statements to inmates in the Annex, and an attack by an inmate from outside the Annex. This Court cannot say that liability under *Farmer* and its progeny extends so far.

Accordingly, the Court finds that Mr. Street's Second Amended Complaint fails to state a cognizable Eighth Amendment claim against Mr. Lawson. That defect, however, could arguably be cured by amendment. Accordingly, the Court will grant Mr. Street 14 days from the date of this Order to file a Motion to Amend and a proposed Third Amended Complaint that adequately alleges (if Mr. Street can do so consistently with his obligations under Fed. R. Civ. P. 11(b))

specific facts demonstrating a connection between Mr. Lawson's conduct and Mr. Simon's assaults.

Turning to the claim against Mr. Brown, Mr. Street alleges that Mr. Brown specifically instigated the attacks. Specifically, Mr. Street alleges that Mr. Simon told him that Mr. Brown "wanted [Mr. Street] fucked with." A reasonable inference one could draw from this assertion is that Mr. Brown encouraged Mr. Simon's assault of Mr. Street. For purposes of a motion to dismiss, the Court must treat such an allegation as true, even while it recognizes that Mr. Street may have a great deal of difficulty in proving this.[3] But that is a concern for another day. Taking the factual allegations in the Second Amended Complaint in the light most favorable to Mr. Street, there are allegations sufficient to demonstrate that Mr. Brown subjectively perceived a risk that persons such as Mr. Simon would assault Mr. Brown and that he was deliberately indifferent to that risk.

The Defendants argue that, even if Mr. Street states a cognizable claim against them, they are entitled to qualified immunity. The qualified immunity argument focuses solely on Mr. Street's ability to allege a cognizable constitutional injury; the Defendants do not (and cannot) contend that the contours of the constitutional right asserted by Mr. Street are not "clearly established." Accordingly, because the Court finds that Mr. Street has (or may be able to) assert cognizable 8th Amendment claims against Mr. Brown and Mr. Lawson, they are not entitled to qualified immunity.

## **CONCLUSION**

For the foregoing reasons, Defendants Brown and Lawson's Motion to Dismiss **(# 33)** is

---

[3] One difficulty will be the hearsay nature of Mr. Simon's statement.

**GRANTED IN PART**, insofar as the claim against Defendant Lawson is dismissed for failure to state a claim, subject to Mr. Street filing a Motion to Amend with a proposed Third Amended Complaint that cures the defects noted above with regard to that claim within 14 days of this Order; and **DENIED IN PART**, insofar as Mr. Street states a cognizable 8th Amendment claim against Mr. Brown.  Within 14 days, Mr. Street shall **SHOW CAUSE** why his claims against Mr. Simon should not be dismissed for failure to effect timely service under Fed. R. Civ. P. 12(m).

Dated this 30th day of March, 2012

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge